**CASE NO. 24-10248**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA;
FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF
COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER
BANKERS ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS,

Plaintiffs – Appellants

v.

CONSUMER FINANCIAL PROTECTION BUREAU; ROHIT CHOPRA, in his
official capacity as Director of the Consumer Financial Protection Bureau ,

Defendants – Appellees.

*On Appeal from the United States District Court for the*
*Northern District of Texas, Fort Worth Division*

**APPELLANTS' EMERGENCY MOTION FOR INJUNCTION PENDING**
**APPEAL AND ADMINISTRATIVE STAY**

Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

*COUNSEL FOR APPELLANTS*

Thomas Pinder
D.C. Bar No. 451114
tpinder@aba.com
Andrew Doersam
D.C. Bar No. 1779883
adoersam@aba.com
AMERICAN BANKERS
ASSOCIATION
1333 New Hampshire Ave. NW
Washington, DC 20036

***COUNSEL FOR AMERICAN
BANKERS ASSOCIATION***

Jennifer B. Dickey
D.C. Bar No. 1017247
Jdickey@uschamber.com
Maria C. Monaghan
D.C. Bar No. 90002227
mmonaghan@uschamber.com
U.S. CHAMBER LITIGATION
CENTER
1615 H Street NW
Washington, DC 20062

***COUNSEL FOR CHAMBER OF
COMMERCE OF THE UNITED
STATES OF AMERICA***

## CERTIFICATE OF INTERESTED PERSONS

*Chamber of Commerce of the United States et al. v. Consumer Financial Protection Bureau, et al.*, No. 24-10248

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Chamber of Commerce of the United States;

2. Fort Worth Chamber of Commerce;

3. Longview Chamber of Commerce;

4. American Bankers Association;

5. Consumer Bankers Association;

6. Texas Association of Business;

7. Consumer Financial Protection Bureau

8. Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau;

9. Paul Hastings LLP, counsel for Appellants; and

10. Cantey Hanger LLP, counsel for Appellants.

 /s/ Michael Murray
Michael Murray
Attorney of Record for Appellants

Dated March 25, 2024

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND NATURE OF EMERGENCY ..........................................1

STATEMENT ...................................................................................................4

STANDARD .....................................................................................................9

ARGUMENT .....................................................................................................9

    I.    THE DISTRICT COURT HAS EFFECTIVELY DENIED
            PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION .....10

    II.   PLAINTIFFS HAVE DEMONSTRATED A STRONG
            LIKELIHOOD OF SUCCESS ON THEIR APPEAL .......................11

    III.  PLAINTIFFS ARE EXPERIENCING IRREPARABLE
            HARM, WHICH DEFENDANTS DID NOT CONTEST IN
            THEIR PRELIMINARY INJUNCTION OPPOSITION, AND
            WILL CONTINUE TO EXPERIENCE SUCH HARM
            ABSENT AN INJUNCTION FROM THIS COURT .......................16

    IV.  THE BALANCE OF HARMS AND THE PUBLIC INTEREST
            WEIGH IN FAVOR OF AN INJUNCTION PENDING
            APPEAL .............................................................................................19

CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.*,
  No. 23-50491, 2023 WL 9864371 (5th Cir. Aug. 7, 2023) ..................................9

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ..........................................................................................8, 10

*Clarke v. Commodity Futures Trading Comm'n*,
  74 F.4th 627 (5th Cir. 2023) ..........................................................................8, 10

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ...............................................................................20

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) .............11, 12

*Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*,
  756 F.3d 380 (5th Cir. 2014) ..........................................................................8, 10

*Defense Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ...............................................................................20

*First Pentecostal Church of Holly Springs v. City of Holly Springs*,
  959 F.3d 669 (5th Cir. 2020) ..........................................................................9, 16

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*,
  944 F.2d 940 (D.C. Cir. 1991) .............................................................................12

*Mock v. Garland*,
  No. 23-10319 (5th Cir. May 23, 2023) ..................................................................9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) .............................................................................................12

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ........................................................................11, 16

*Tull v. United States*,
  481 U.S. 412 (1987) .............................................................................................12

i

*Wages & White Lion Invs., L.L.C. v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) ......................................................16, 19

*Weingarten Realty Invs. v. Miller*,
   661 F.3d 904 (5th Cir. 2011) ...............................................................9

*Wildmon v. Berwick Universal Pictures*,
   983 F.2d 21 (5th Cir. 1992) .................................................................9

**Statutes**

5 U.S.C. § 703 .......................................................................................20

5 U.S.C. § 706(2)(A) & (C) ...................................................................12

15 U.S.C. § 1602(v) ...............................................................................15

15 U.S.C. § 1604(d) ...............................................................1, 6, 14, 15

15 U.S.C. § 1665d ...................................................................................5

15 U.S.C. § 1665d(b) ...............................................................................4

15 U.S.C. § 1665d(c) .............................................................................12

15 U.S.C. § 1693o-2(a)(2) ...............................................................13, 14

28 U.S.C. § 1404(a) ........................................................................2, 6, 20

Administrative Procedure Act................................................................20

Credit Card Accountability Responsibility and Disclosure Act of 2009.............5, 13

**Other Authorities**

12 C.F.R. § 1026.6(b)(2)(viii)................................................................16

12 C.F.R. § 1026.9(c)(2)(iii)............................................................16, 17

## INTRODUCTION AND NATURE OF EMERGENCY

Plaintiffs, the Chamber of Commerce of the United States of America, Fort Worth Chamber of Commerce, Longview Chamber of Commerce, American Bankers Association, Consumer Bankers Association, and Texas Association of Business, respectfully request emergency relief from this Court to address the irreparable harm inflicted on Plaintiffs and their members by a rule promulgated by the Consumer Financial Protection Bureau (CFPB). Plaintiffs are faced with highly unusual circumstances, which never would have arisen but for the CFPB's decision to rush the effective date of the rule governing credit card late fees, Credit Card Penalty Fees (Regulation Z) [hereinafter the "Final Rule" or "Rule"]. App.012-107. The CFPB violated a statutory requirement that it allow at least six months to implement a rule like the one at issue here, 15 U.S.C. § 1604(d), and instead gave Plaintiffs' members only 60 days to comply. In light of the irreparable harm inflicted on Plaintiffs' members, Plaintiffs sought a preliminary injunction to stay the fast-approaching effective date of the Rule. Plaintiffs now appeal the effective denial of their motion for a preliminary injunction and respectfully ask this Court for an administrative stay of the rule and, ultimately, an injunction pending appeal.

The CFPB has not contested that binding precedent of this Court gives the Plaintiffs a likelihood of success on the merits of their challenge under the Appropriations Clause. Nor has the CFPB contested that, absent an injunction,

Plaintiffs' members will suffer irreparable injury, including in the form of substantial and accelerating compliance costs before the 60-day effective date for the Rule. Unfortunately, this emergency manufactured by the CFPB nevertheless has real-world consequences for Plaintiffs' members, which necessitate bringing this emergency request.

Plaintiffs originally filed suit and a preliminary injunction motion on March 7, 2024, two days after the rule was finalized. The district court then granted Plaintiffs' request for an expedited briefing schedule on the motion. Unfortunately, the district court has not decided the preliminary injunction motion. The district court, instead, sua sponte invited the CFPB to file a motion for discretionary transfer of venue under 28 U.S.C. § 1404(a) because only one of the Plaintiffs resides in the Fort Worth Division in which they filed suit. Plaintiffs asked the district court to resolve their preliminary-injunction motion before ordering any discretionary transfer, and in all events by Friday, March 22, 2024, to avoid the irreparable harm that would be caused by further delay and preserve their opportunity for timely appellate review in this Court if necessary to address such harm. The district court denied that request and did not act on the preliminary-injunction motion. Plaintiffs thus must respectfully ask this Court for an administrative stay of the rule and, ultimately, an injunction pending appeal.

By declining to rule on Plaintiffs' fully briefed motion for a preliminary injunction before resolving a discretionary issue of venue, despite the uncontested and ongoing irreparable harm, the district court has effectively denied Plaintiffs' motion. If the district court grants a discretionary motion for transfer, resolution of Plaintiffs' motion will be inevitably delayed by both the process of having a new judge prepare to decide the motion and the uncertainty that will be created by any mandamus proceedings related to that transfer. Indeed, if the case were transferred out of the Circuit, Plaintiffs are not even sure that they would be able to obtain appellate review of the transfer, let alone of the denial of their preliminary injunction motion, in this Court before the effective date. And if the district court declines the discretionary motion for transfer, more than a week of additional increasing compliance costs will have occurred, with no certainty as to when, if ever, the district court will turn to Plaintiffs' motion. A decision in the near term seems not only unlikely, but foreclosed. App.308. And with every day that passes, the Rule's effective date ticks closer and the irreparable harm to Plaintiffs' members grows.

Plaintiffs' members will continue to suffer irreparable harm absent this Court's intervention. As explained at length in the papers below, the Final Rule requires credit card issuers representing 95% of the market to update the printed and electronic disclosures that are distributed to each new credit card user in this country and millions of periodic disclosures to existing cardholders. Because approving new

disclosure language and ordering new materials takes months, credit card issuers covered by the Final Rule must begin that costly process now. Further, to the extent that credit card issuers want to accept the CFPB's invitation to modify other terms of their credit cards to mitigate the losses they will face under the Rule, they must provide written notice of those changed terms to customers 45 days in advance of any such change. To time those changes with the Final Rule's May 14, 2024 effective date, such notices would need to be *received* by customers by March 29, 2024. But, of course, if such notices are sent and then the Rule were to be enjoined, reversing course would cause immense customer confusion, potential loss of customer goodwill, and millions of dollars of costs for new notices.

In light of these unusual circumstances, Plaintiffs respectfully request an injunction pending appeal of the effective denial of their motion for preliminary injunction and an immediate administrative stay to afford this Court time to consider their motion.

## STATEMENT

The underlying challenge in this case concerns the CFPB's new Credit Card Penalty Fees Rule, which upends the way that credit card issuers have assessed late fees for over a decade. Congress has expressly recognized that issuers may impose "penalty fee[s]" when customers violate their credit card agreements, so long as such fees are "reasonable and proportional to the omission or violation." 15 U.S.C.

§ 1665d(b). And it tasked federal agencies—first the Federal Reserve Board of Governors (the "Board"), and now the CFPB—with establishing standards for ensuring that such "penalty fees" are reasonable and proportional, taking into account the costs incurred by the issuer from such violation, the deterrence effects of a late fee, and the conduct of the cardholder. 15 U.S.C. § 1665d. A decade ago, the Board promulgated, and the CFPB subsequently adopted, a regulatory framework that attempted to incorporate those three statutory criteria into its late-fee safe harbor.

In the Final Rule, the CFPB slashes the existing safe harbor amount by 75 percent, permitting credit card issuers to collect $8 for first-time and subsequent late payments instead of the $30 and $41 that were previously allowed. In setting that new amount, the CFPB has effectively jettisoned two of the criteria that Congress directed it to consider and focused solely on a subset of the costs that issuers incur as a result of late payments. Because the Rule will prevent issuers from collecting the reasonable and proportional penalty fees that the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act") expressly authorizes, the Rule plainly exceeds the CFPB's statutory authority.

Worse, the CFPB issued this Rule in the shadow of precedent from this Court holding that the CFPB's funding structure, which draws funds from the Federal Reserve without congressional appropriation, violates the Appropriations Clause.

And it imposed a 60-day effective date that is not only unworkable for credit card issuers, but violates the Truth in Lending Act's provision that any rules "requiring any disclosure which differs from the disclosures previously required by this part . . . shall have an effective date of that October 1 which follows by at least six months the date of promulgation."  15 U.S.C. § 1604(d).

The CFPB announced the rule on March 5, 2024, and Plaintiffs promptly filed this lawsuit and motion for preliminary injunction on March 7, 2024.  Plaintiffs decided not to request a temporary restraining order out of consideration for district court resources, but requested expedited briefing and a decision within 10 days (by March 17, 2024), explaining that the process of printing and distributing new disclosures had to begin immediately, as it typically takes 4 months when done on an issuer-by-issuer basis and would take much longer with issuers representing 95% of the affected accounts forced to act at once.  The next day, Judge O'Connor granted Plaintiffs' motion for expedited briefing for "good cause" and set a briefing schedule that concluded on March 14, 2024.  App.210.  Judge O'Connor then recused himself on March 14, 2024, and Judge Mark Pittman was assigned.  App.251.

On March 18, 2024, four days after the preliminary-injunction motion was fully briefed, Judge Pittman issued an order inviting the CFPB to file a motion for discretionary transfer of the case under 28 U.S.C. § 1404(a) and setting a briefing

schedule that would continue for an additional week. App.275-76. The CFPB gave notice on March 19, 2024, of its intention to file such a motion. App.278.

In light of the accruing irreparable harm and concern that a transfer would both cause additional irreparable harm and deny Plaintiffs' appellate review in this Court, Plaintiffs filed a motion for expedited consideration of their preliminary injunction motion, asking the district court to resolve that motion *before* considering any discretionary transfer and in all events by Friday, March 22, 2024. App.282-84; App.303. Plaintiffs further requested that, if the court denied their motion, the court issue an injunction pending appeal. *Id.* Plaintiffs explained that because venue is proper in the Fort Worth Division, any question of discretionary transfer did not go to the propriety of injunctive relief. Plaintiffs further noted that, although they had presented other claims in their motion, the court could grant an injunction by relying solely on this Court's binding precedent regarding the Appropriations Clause and Plaintiffs' uncontested showing of irreparable harm.

The district court denied Plaintiffs' motion for expedited consideration on March 20, 2024, citing the demanding dockets in the Northern District of Texas, as compared to the District of Columbia. App.308. The court did not address the harms cited by Plaintiffs. *See id.* ("[T]he Court does not have the luxury to give increased attention to certain cases just because a party to the case thinks their case is more important than the rest.").

That same day, the CFPB filed a motion to transfer the case to the U.S. District Court for the District of Columbia. App.310. The motion advances a novel theory of venue under which plaintiffs challenging agency action may do so only in (a) the district where the rule was promulgated and the agency resides (typically, the District of Columbia), or (b) the district where a plurality of the plaintiffs are located *and*, in the case of association plaintiffs, where at least one of those plaintiffs' members is *headquartered*. That theory has no basis in law, would concentrate virtually all agency challenges within judicial districts that cover major cities, and would unduly deprive plaintiffs of their privilege to file claims in any judicial division permitted by the general venue statute. In compliance with the district court's briefing schedule, Plaintiffs submitted a response in opposition earlier today. The district court has not ruled on Plaintiffs' motion for preliminary injunction.

This Court has jurisdiction to consider this matter because the district court's actions "while not explicitly denying a preliminary injunction, nonetheless ha[ve] the practical effect of doing so and might cause irreparable harm absent immediate appeal." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023) (cleaned up); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981); *Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*, 756 F.3d 380, 384 & n.7 (5th Cir. 2014). Because credit card issuers must begin the process of updating their disclosures now, and because notices for any contemporaneous changes to other

8

credit card terms need to be printed, mailed, and *received* by customers by March 29, 2024, the district court's decision not to act on the motion by Friday, March 22, 2024, constitutes an effective denial.

## STANDARD

On a motion for injunction pending appeal, a court considers whether an applicant shows (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the party whom it seeks to enjoin; and (4) that granting the injunction will not disserve the public interest. *See Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011); *Wildmon v. Berwick Universal Pictures,* 983 F.2d 21, 23 (5th Cir. 1992).

This Court has issued emergency injunctions of this type to protect movants from irreparable harm. *See, e.g.*, *First Pentecostal Church of Holly Springs v. City of Holly Springs*, 959 F.3d 669, 670 (5th Cir. 2020); *Mock v. Garland*, No. 23-10319 (5th Cir. May 23, 2023); *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, No. 23-50491, 2023 WL 9864371 (5th Cir. Aug. 7, 2023).

## ARGUMENT

Plaintiffs satisfy all four of the elements to merit an injunction under binding precedent, this Court has jurisdiction to consider the effective denial of a preliminary injunction, and the district court abused its discretion in denying it.

## I. The District Court Has Effectively Denied Plaintiffs' Motion for Preliminary Injunction.

This Court has recognized that, "[u]nder *Carson*, a court of appeals may review a district court's order that, while not explicitly denying a preliminary injunction, nonetheless has the practical effect of doing so and might cause irreparable harm absent immediate appeal." *Clarke*, 74 F.4th at 635 (cleaned up); *see also Thomas ex rel. D.M.T.*, 756 F.3d at 384 & n.7. Those are precisely the circumstances present here.

The district court has effectively denied Plaintiffs' motion for a preliminary injunction by declining to act on it by the date Plaintiffs had respectfully identified as the date by which they would need to seek review in this Court to protect their rights, as well as by denying Plaintiffs' request to expedite consideration of the motion before evaluating venue. These actions have the practical effect of denying their motion. *See Clarke*, 74 F.4th at 635 (finding effective denial where "the district court did not rule on the preliminary injunction motion, even after Appellants moved to expedite its consideration in light of [a] looming deadline").

Plaintiffs understand that they are requesting urgent relief, but unfortunately, have no other option to protect their rights given the CFPB's unlawfully rushed effective date and the millions of dollars that issuers must spend to come into compliance. Large card issuers must prepare and print new disclosures to reflect the Final Rule's $8 safe harbor, and as one of the largest third-party processors explained

to the CFPB, that process typically takes 4 months when done on an issuer-by-issuer basis and would take much longer with the industry forced to act at once.  App.208. It is the *CFPB*, not the issuers, who nonetheless set this effective date of May 14, 2024.  Card issuers cannot wait until that date to come into compliance; they are approving, ordering, and printing new disclosures *now*.  And if issuers wish to contemporaneously change other card terms to mitigate the substantial decrease in late fees—a measure that the CFPB itself suggested—they must notify their customers by March 29, 2024.  Put simply, in light of the already-accruing irreparable harm, postponing a ruling on Plaintiffs' preliminary injunction motion so that the parties can litigate a discretionary venue issue effectively denies the relief that Plaintiffs expeditiously sought.  It also ultimately renders toothless the precedent of this Circuit holding that unrecoverable compliance costs present irreparable harm that, when combined with a likelihood of success on the merits, warrant preliminary injunctive relief.  *See Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (explaining that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs" (internal quotation marks omitted)).

## II.  Plaintiffs Have Demonstrated a Strong Likelihood of Success on their Appeal.

Plaintiffs have a strong likelihood of success on each of the claims presented in their motion for preliminary injunction, although this Court need only rely upon

the first to issue the emergency relief requested here. Specifically, this Court has already ruled that the CFPB's funding structure, which draws funds from the Federal Reserve without congressional appropriation, violates the Appropriations Clause. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 635-42 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023). And the CFPB does not contest here that the Final Rule was funded through the same mechanism as the rule at issue in *Community Financial*. *See* 51 F.4th at 638 n.11 (establishing that the CFPB has no other funding source for promulgating regulations); App.224.

Further, the CFPB exceeded its statutory authority in issuing the Final Rule. *See* 5 U.S.C. § 706(2)(A) & (C). Congress expressly denominated a late fee a "penalty fee" for a "violation," which is by its plain meaning a fee that deters the violation and accounts for the conduct of the violation. *See Tull v. United States*, 481 U.S. 412, 422-23 (1987) (discussing how civil penalties should consider conduct and deterrence); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 947 (D.C. Cir. 1991) ("A fine or penalty, in contrast, is not understood to be dollar-for-dollar recompense."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (noting that special damages are aimed at deterrence). Indeed, Congress enumerated precisely these criteria for considering regulations of a "penalty fee." 15 U.S.C. § 1665d(c) (requiring the CFPB to consider not only the "cost incurred by the creditor from [an] omission or [a] violation" of the cardholder

agreement, but also "deterrence of such omission or violation by the cardholder" and "conduct of the cardholder"). Congress also rejected earlier iterations of the CARD Act that would have tied late fees solely to issuer costs and directed agencies to focus on cost in other statutes. *See, e.g.*, Credit Card Accountability Responsibility and Disclosure Act of 2009, S. 414, 111th Cong. § 103 (as reported by S. Comm. on Banking, Hous., & Urb. Affs., Apr. 29, 2009) (emphasis added) (providing that "the amount of any fee or charge that a card issuer may impose in connection with any omission with respect to, or violation of, the cardholder agreement, including any late payment fee, shall be reasonably related *to the cost to the card issuer* of such omission or violation");15 U.S.C. § 1693o-2(a)(2) ("The amount of any interchange transaction fee that an issuer may receive or charge with respect to an electronic debit transaction shall be *reasonable and proportional to the cost incurred by the issuer* with respect to the transaction").

Yet the CFPB's Final Rule does not allow issuers to collect such reasonable and proportional penalty fees. Instead, the Final Rule would allow only much lower fees to recoup (a subset of) issuers' costs from late payments. Specifically, the CFPB gives larger issuers two options: using a narrowed cost-analysis standard to set their late fee or complying with a safe harbor of $8 (as compared to the existing $30 for a first violation and $41 for any subsequent violations within six months, adjusted annually for inflation). The CFPB believes that the lowered safe harbor will "cover

pre-charge-off collection costs for Larger Card Issuers on average." Final Rule at 123. As the CFPB put it, "costs are the best guide to what constitutes a 'reasonable and proportional' fee." *Id.* Indeed, in the CFPB's view, it is *not* required to provide means for issuers to collect a late fee with a "meaningful" deterrent effect, Opp'n 20, nor to account for cardholder conduct in any meaningful way. That is not the scheme Congress enacted.

*And finally*, the Final Rule's 60-day effective date violates the Truth In Lending Act's provision that rules requiring new disclosures to consumers "shall have an effective date of that October 1 which follows by at least six months the date of promulgation." 15 U.S.C. § 1604(d). The CFPB acknowledges that issuers representing an estimated 95% of open credit card accounts will need to change their late fees in response to the Final Rule, and that they will likewise need to change their disclosures (in applications, card agreements, statements, and customer education materials). *See* Final Rule at 218-19 ("Larger Card Issuers would have 60 days to delete the existing late fee figure in their disclosures and replace it with $8 or another number computed using the cost analysis provisions, and this change would only have to appear on disclosures mailed or delivered to consumers 60 days after publication of this final rule in the *Federal Register*."). Yet the CFPB blithely set a 60-day effective date on the basis that changes to the particular (often two-tiered) amounts disclosed did not amount to a change in the required disclosures (a position

inconsistent with the text and statutory context) and that issuers do not have to rely on the safe harbor (a position belied by their own findings).

First, the plain meaning of TILA requires the CFPB to give an effective date of the October 1 at least six months after promulgation of *any* regulation that requires new disclosures. 15 U.S.C. § 1604(d). The statutory context confirms that regulations requiring alteration of the *amount* of disclosed fees qualify for TILA's effective date. *See, e.g.*, 15 U.S.C. § 1602(v) (defining the more specific term "material disclosures" to include specific aspects of disclosures like "the annual percentage rate" and "the amount of the finance charge" and "the number and amount of payments"); *id.* § 1602(aa) ("The disclosure of an amount or percentage which is greater than the amount or percentage required to be disclosed under this subchapter does not in itself constitute a violation of this subchapter.").

Second, the CFPB acknowledged in the Final Rule that it "found no evidence of any issuers using the cost analysis provisions to charge an amount higher than the safe harbor." Credit Card Penalty Fees, 89 Fed. Reg. at 19,130. Thus, any credit card issuer seeking to maintain its current late fee rather than adjust to the $8 safe harbor would have to justify that late fee with a cost analysis and "do so" by the Final Rule's "effective date." *Id.* at 19,189. Because performing a cost analysis within 60 days is complicated, card issuers may have to adjust to the $8 safe harbor,

at least initially, and then provide new disclosures that trigger TILA's effective date. *See id.*

For each of these reasons, this Court is likely to conclude that Plaintiffs made a strong showing of likelihood of success on the merits of their claims in the district court.

## III. Plaintiffs Are Experiencing Irreparable Harm, Which Defendants Did Not Contest in Their Preliminary Injunction Opposition, and Will Continue to Experience such Harm Absent an Injunction from this Court.

As explained at length in declarations submitted in the district court and uncontested by the Defendants, if implementation of the Rule is not enjoined, Plaintiffs' members face six types of irreparable harm. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

*First*, Plaintiffs' members will experience three types of significant compliance costs, many of which they are already incurring. In this Circuit, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433 (internal citation omitted). And here, in light of the short effective date, those compliance costs are extremely pressing. Plaintiffs' members must update the fee disclosures provided to cardholders and prospective cardholders before the effective date of May 14, 2024. *See* 12 C.F.R. §§ 1026.6(b)(2)(viii), 1026.9(c)(2)(iii). They must also update periodic disclosures for hundreds of

millions of credit card accounts and destroy and reprint many existing documents. *See* App.150; App. 154-55; App.162; App. 168-69; App.176; App.183-84; App.191; App.196-97; App.204. One large credit card processor informed the CFPB that the new disclosures contemplated by the proposed rule would take approximately 10 months to print and distribute. App.208. In addition, if a card issuer increases rates or minimum payments to mitigate the effects of its rule, as the CFPB advises, the issuer would be required to send updated disclosures to its current cardholders at least 45 days before implementing the new terms. *See* 12 C.F.R. § 1026.9(c)(iii)(2). Card issuers will also need to train compliance, customer-service, and other staff on the Final Rule's new requirements. *See* App.151; App.191-92; App204.

*Second*, there is a significant risk that Plaintiffs' members will be unable to approve and print all of the required physical disclosures in the 60-day timeline set by the CFPB, exposing them to potential enforcement actions. *See* App.157; App.178; App.186-87; App200.

*Third*, if the Rule were to take effect, Plaintiffs' directly-affected members would lose significant amounts of late-fee revenue. *See* App.151; App.192.

*Fourth*, the Rule will make consumers more likely to make late payments, increasing "overhead and staffing costs for members from the increased number of

17

collection efforts and customer-service contacts that will be required to address such payments." App.185.

*Fifth*, some issuers relied heavily upon the current late fee safe harbor in making decisions to issue particular accounts and thus will be left with accounts with diminished economic value. *See* App.191.

 *Sixth*, issuers face the prospect of losing customer goodwill if they are forced to drop their late fees only to raise them later or if they are forced to make other changes to recoup lost late-fee revenue. *See* App.185; *see* 88 Fed. Reg. at 18908 ("Survey data suggest that other factors, such as rewards, annual fees, and annual percentage rate(s) (APR), drive credit card usage.").

 Although it did not any of these harms in its Opposition, in its later brief in support of its motion to transfer, the CFPB suggests that these harms should somehow be discounted because issuers can always try to recoup lost revenue later and because one issuer in one instance was able to notify its customers of an upcoming changed late fee in roughly five weeks.  App.320-36.  Neither of these arguments denies that ultimately issuers *will* incur substantial compliance costs between now and when this Final Rule is effective on May 14, 2024 (51 days from today), nor presents any evidence to contradict Plaintiffs' showing that these costs are irreparable under this Court's precedent.  Moreover, the single instance they cite of an issuer being able to send such a swift notification involved *months* of

preparatory work that the issuer was able to undertake only because the precise amount of the CFPB's inflationary adjustment to the safe harbor was knowable in advance. App.378. In this case, of course, issuers could not know what safe-harbor amount the CFPB would ultimately adopt until it announced the rule on March 5, 2024.

## IV. The Balance of Harms and the Public Interest Weigh in Favor of an Injunction Pending Appeal.

The equities favor an injunction pending resolution of this case. "[T]he maintenance of the *status quo* is an important consideration in granting a stay." *Wages & White Lion*, 16 F.4th at 1143. The harms to Plaintiffs' members will be substantial, while the harms to the CFPB in delaying the effective date of its rulemaking are negligible. The existing framework has been in place for more than a decade, supported by CFPB directors across administrations, and is well-understood by the American people. In all events, "[t]he public interest is in having governmental agencies abide by the federal laws that govern their existence and operations. And there is generally no public interest in the perpetuation of unlawful agency action." *Wages & White Lion*, 16 F.4th at 1143 (cleaned up).

\*    \*    \*

In sum, Plaintiffs respectfully ask this Court to act now to protect their rights. Plaintiffs presented a powerful motion for preliminary injunction—one for which there is binding precedent on point for both the merits and their irreparable harm.

And they presented it in a proper venue—the Fort Worth Division—where Plaintiff Fort Worth Chamber of Commerce resides and has identified a member by name who is experiencing harm in that District and Division. The fact that other Plaintiffs not based in Fort Worth (two from Texas and three from outside of Texas) have joined the suit does not make Plaintiffs' choice of venue any less proper or entitled to deference. *See Defense Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). Nor does it necessitate delaying resolution of Plaintiffs' properly-presented and urgent request for preliminary injunctive relief. The motion for a discretionary transfer to the U.S. District Court for the District of Columbia is both irrelevant to the motion for preliminary injunction and would be improper to grant under this Court's precedent in any event. *See, e.g.*, *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024) ("It is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion."); App.386-416. Under the CFPB's theory, district courts in Texas and across the country should routinely transfer mine-run Administrative Procedure Act cases like this one to the U.S. District Court for the District of Columbia, even though the parties have identified no need for evidentiary testimony there and even though venue is proper where the case was filed. That is not the scheme that Congress enacted, nor that has prevailed in this Circuit for nearly 70 years. *See* 5 U.S.C. § 703 (allowing Administrative Procedure Act cases to be brought in any "court of competent jurisdiction" where there is no court specified by

statute). To decline to rule upon motions for preliminary injunction under circumstances like those presented in this case would make it impossible for residents of this Circuit to obtain justice here.

## CONCLUSION

Plaintiffs respectfully ask that the Court grant their emergency motion for injunction pending appeal, and an administrative stay of the Rule during its consideration of the motion.

Dated: March 25, 2024

Respectfully submitted,

*/s/ Michael Murray*
Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

*COUNSEL FOR APPELLANTS*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on March 25, 2024, I filed foregoing motion via the Court's CM/ECF system and

also caused the foregoing to be served by email on the following counsel for

Defendants-Appellees:

Stephanie Garlock
Justin Michael Sandberg
1700 G Street, NW
Washington, DC 20552
stephanie.garlock@cfpb.gov
justin.sandberg@cfpb.gov

*/s/ Michael Murray*
Michael Murray

*Attorney for Appellant*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on March 25, 2024, Derek Carson, counsel for

Appellant, conferred via e-mail with Stephanie Garlock, counsel for Appellees,

about the foregoing motion. Defendants oppose the relief requested in this motion.

*/s/ Michael Murray*
Michael Murray

*Attorney for Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a)

because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it

contains 4,944 words. This brief also complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of

Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word in 14-point Times New Roman font. Additionally,

I certify that any required redactions have been made in compliance with 5th Cir.

R. 25.2.13. I certify that the facts supporting emergency consideration of the

motion are true and complete.

Dated: March 25, 2024

*/s/ Michael Murray*
Michael Murray

*Attorney for Appellant*