# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2024

Lyle W. Cayce
Clerk

No. 24-40103

———————

In re Space Exploration Technologies, Corporation,

*Petitioner.*

———————————————

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

———————————————

UNPUBLISHED ORDER

Before Elrod, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:

This case comes before us in a unique procedural posture. The district court ordered that Space Exploration Technologies's lawsuit against NLRB be transferred to the Central District of California. Because SpaceX petitioned for a writ of mandamus and because we stayed that transfer order prior to the case being docketed in the Central District of California, the Southern District of Texas is DIRECTED to REQUEST that the Central District of California return the transferred case.

The Southern District of Texas ordered that this case be transferred on February 15, 2024. Order, *Space Expl. Techs. Corp. v. NLRB*, No. 1:24-cv-1 (S.D. Tex. Feb. 15, 2024), ECF No. 82. That court immediately sent the case electronically, giving SpaceX no opportunity to request a stay of the

transfer order either in that court or this one. SpaceX petitioned this court for a writ of mandamus on February 16, 2024, requesting that we direct the district court to vacate its transfer order. *See Defense Distributed v. Bruck*, 30 F.45h 414, 425 (5th Cir. 2022) (noting the diligence of the party contesting transfer "immediately"). Our court stayed the Southern District of Texas's transfer order on February 19, 2024. Nevertheless, the Central District of California docketed the case four days later, on February 23, 2024, as case number 2:24-cv-1352-CBM-AGR.[1]

This leads to potential ambiguity over which court has jurisdiction over the case. Our court has not been stripped of its jurisdiction until transfer has been completed. Transfer is not complete the moment a case is electronically sent to an out-of-circuit court. Rather, the case must be both sent and *docketed* for a transfer to be complete. *See Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987) ("We adopt the docketing date as the time of effective transfer. . . . Once jurisdiction is properly obtained by the appellate court it is not terminated by the subsequent completion of a section 1404 transfer."); 17 James William Moore et al., *Moore's Federal Practice* § 111.64(2)(a) (3d ed. 1999) ("[G]enerally the transferor court, including the circuit court, loses jurisdiction as soon as the files in the case are transferred *and docketed* in the transferee court." (emphasis added)).

---

[1] We note that NLRB filed a notice with the Central District of California stating that "the transferee court is not obliged to honor the request if it determines that retransfer is not appropriate or warranted." *Space Expl. Techs. Corp. v. NLRB*, No. 2:24-cv-1352-CBM-AGR (C.D. Cal. Feb. 23, 2024), ECF No. 96 at 2. We are skeptical about the wisdom of docketing a case when the transfer order has already been stayed. Nevertheless, retransfer will maintain procedural clarity, reduce inter-circuit friction, and foster comity. *See Defense Distributed v. Platkin*, 55 F.4th 486, 494 (5th Cir. 2022) ("Courts 'prophylactically refuse[e] to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court.' The rule is intended to 'maximize' 'the values of economy, consistency, and comity.'" (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)) (internal citation omitted) (alteration in original)).

We, along with many of our sister circuits have directed district courts to request retransfer from an out-of-circuit court in the past. *See Bruck*, 30 F.4th at 424–25 (stating that "the balance of circuit authority" favors jurisdiction); *In re Warrick,* 70 F.3d 736, 740 (2d Cir. 1995) ("[W]hen the transferred case has been docketed in the transferee court despite the petitioner's diligence, this Court can order a district court in this circuit to request the transferee court to return the case.") (internal citation and quotations omitted); *Town of N. Bonneville, Wash. v. U.S. Dist. Court, W. Dist. of Wash.,* 732 F.2d 747, 752 (9th Cir. 1984); *In re Sosa,* 712 F.2d 1479, 1480, n.1 (D.C. Cir. 1983); *In re Nine Mile Ltd.,* 673 F.2d 242, 244 (8th Cir. 1982).

In *Bruck*, Defense Distributed appealed the transfer order the day after it was entered, and the case was not docketed in the out-of-circuit court until the day after that. *Bruck*, 30 F.4th at 425. Here, SpaceX petitioned for a writ of mandamus the day after the transfer order, we stayed that order three days later, and the receiving district court did not docket the case until four days after that. Accordingly, this court still has jurisdiction over the case.

\*    \*    \*

We make no comment on the merits of SpaceX's pending petition for a writ of mandamus and nothing in this opinion should be construed to preview any decision on the merits of that petition. In the interest of procedural consistency and comity, the Southern District of Texas is DIRECTED to immediately REQUEST that the Central District of California return the transferred case to the Southern District of Texas, Brownsville Division.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, ET AL.,

    Plaintiffs,

v.                                                    No. 4:24-cv-00213-P

CONSUMER FINANCIAL PROTECTION
BUREAU, ET AL.,

    Defendants.

## OPINION & ORDER

Before the Court is Defendants' Motion to Transfer. ECF No. 52. Having considered the Parties' briefs and applicable law, the Court finds the Motion should be and hereby is **GRANTED**. Accordingly, the Court **TRANSFERS** this case to the United States District Court for the District of Columbia ("D.D.C").

## BACKGROUND

The Chamber of Commerce of the United States, the American Bankers Association, the Consumer Bankers Association, the Texas Association of Business, the Longview Chamber of Commerce, and the Fort Worth Chamber of Commerce ("Plaintiffs") challenge the 2024 Late Fee Rule promulgated by the Consumer Financial Protection Bureau ("CFPB"). Acting under authority purportedly granted by the Credit Card Accountability, Responsibility, and Disclosure Act ("CARD"), the CFPB created the Rule to alter the structure and amount of late fees that credit card companies may charge. Plaintiffs contend that the CFPB acted beyond its statutory authority in promulgating the Rule. They also contend that the Bureau is unconstitutionally structured under the Appropriations Clause, citing Fifth Circuit case law that has held the same.

Days after the CFPB published the Rule, Plaintiffs sued in this Court to vacate and enjoin the regulation.[1] That same day, Plaintiffs sought a preliminary injunction due to litigation pending before the Supreme Court that calls the CFPB's constitutionality into question. With concerns regarding the propriety of venue in the Fort Worth Division of the Northern District of Texas, the Court ordered expedited briefing on the issue and alternatively welcomed Defendants to file the instant Motion to Transfer. Having received full briefing, the Motion is now ripe for review.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Such transfer is between venues, not forums. *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc). "It is well settled that the party moving for a change of venue bears the burden" of demonstrating good cause for why the forum should be changed. *JTH Tax, LLC v. Yong*, No. 4:22-CV-01008-O, 2023 WL 5216496, at *2 (N.D. Tex. Aug. 11, 2023) (O'Connor, J.) (internal quotation marks omitted). To carry that burden, the defendant must show that the transferee venue is "clearly more convenient than the venue chosen by the party." *Volkswagen*, 545 F.3d at 315. If the defendant does not meet this burden, then "the plaintiff's choice should be respected." *Id.*

The plaintiff's choice of venue is "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434–35 (5th Cir. 2003). The weight accorded the Plaintiffs' choice of venue "is diminished where the plaintiff brings suit outside his home forum." *Santellano v. The City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*,

---

[1] It is of note that this Rule does not go into effect until May 14, 2024 and Plaintiffs did not move for a Temporary Restraining Order ("TRO") or seek any other form of immediate relief before deciding to file a Motion for Expedited Preliminary Injunction on March 19, 2024. ECF No. 47.

685 F. Supp. 346, 349 (S.D.N.Y. 1988)); *see also TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.). Courts use a two-step inquiry to determine if transfer is proper. *See Volkswagen*, 545 F.3d at 312. *First*, they ask whether the plaintiff could have originally sued in the transferee district. *Id. Second*, they weigh private- and public-interest factors to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *Id.* at 315.

## ANALYSIS

As an initial matter, it is indisputable that this action could have been brought in the D.D.C. A civil action against a government agency or officer in their official capacity may be brought in a "judicial district in which any defendant resides," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or where the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e). Here, both Defendants and three of the six Plaintiffs live in Washington D.C., where the Rule was promulgated. Compare this with the analysis for Fort Worth, where venue is only established through the residency of one of the six Plaintiffs. Since this matter could have been brought in the D.D.C., the Court must now determine whether private- and public-interest factors weigh in favor of transfer under § 1404(a).

### A. Private-Interest Factors

The private-interest factors to be considered are: (1) ease of access to sources of proof; (2) availability of compulsory process for witnesses; (3) the cost of witness attendance; and (4) all other practical factors that might make a trial more expeditious and inexpensive. *See Volkswagen*, 545 F.3d at 315.

As to the first three factors, this case will chiefly focus on the Administrative Procedure Act ("APA") and the Constitution, with little to no actual physical records or evidence necessary for its resolution. While the Defendants argue that these factors weigh in favor of transfer since any documents or witnesses *would* be located in the District of Columbia, at this stage of litigation it is unclear whether there are actually witnesses or documents needed (the Court assumes there will

not be), and thus the first three factors are neutral with respect to transfer.

However, the fourth factor is not neutral and heavily weighs in favor of transfer. Defendants argue, particularly with respect to the lawyers in this case, that the D.D.C. is the more practical venue. ECF No. 53 at 13. The Court agrees. A review of the record shows there are ten attorneys spanning five different firms or organizations representing the various Parties in this case. Of the ten, *eight* list their offices in the District of Columbia. This means that any proceeding this Court conducts (such as the preliminary injunction hearing set for April 2) will require *all* of Defendants' counsel and two-thirds of Plaintiffs' counsel to travel to Fort Worth—a task that will be charged to their clients or to the government. This would mean that taxpayers, including residents of Fort Worth, would foot an expensive bill for this litigation.

Notably, Plaintiffs do not identify any substantial or practical issues with this case being held in Washington D.C. The Court concludes that, because most of the private interest factors are neutral or weigh in favor of transfer, the private interest factors as a whole weigh in favor of transfer.

### B. Public-Interest Factors

Next, the Court must consider whether public-interest factors weigh in favor of transfer. These public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See Volkswagen*, 545 F.3d at 315. Of the private- and public-interest factors, the public factors move the needle most toward transfer.

*First*, the Court recognizes that the D.D.C. has a busy docket. However, as discussed in the Court's Order denying Plaintiffs' Motion to Expedite, the Northern District of Texas has a significantly busier docket. *See* ECF No. 51 at 2. In 2023, each Judge in the Northern District of Texas saw an average of 287 more filings than each Judge in the D.D.C. *Id.* Indeed, the average D.D.C. Judge saw only 298 cases *at*

*all* in 2023. *Id.* This suggests the D.D.C. would facilitate a more expeditious resolution of this time-sensitive matter. The data verify this, as cases are resolved faster in the D.D.C. than in the Northern District of Texas. The median time for disposition of a case in the D.D.C. is 5.1 months; its 6.5 months in the Northern District of Texas. *See* U.S. DIST. CTS., *Median Time From Filing to Disposition of Civil Cases, by Action Taken*. Given Plaintiffs' insistence that time is of the essence for this case, this factor heavily favors transfer.

*Second*, there is a strong interest in having this dispute resolved in the District of Columbia. The case chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia. Plaintiffs are to bring actions against the United States where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The fact that there are customers of businesses in the Northern District of Texas that will *potentially* feel the effects of the Rule does not create a particularized injury in the Northern District of Texas, nor does it represent a substantial part of the events giving rise to the claim. Under Plaintiffs' theory, there isn't a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule. Plaintiffs could find any Chamber of Commerce in any city of America and add them to this lawsuit in order to establish venue where they desire. It appears this is exactly what Plaintiffs attempt to do by recommending transfer to the Eastern District of Texas, Tyler Division. *See* ECF No. 55 at 5. Here, once again, the only tie to the Eastern District of Texas, Tyler Division is that one of the Plaintiffs happens to be there. None of the events occurred there and there is only a possibility that tangential harm *could* be felt there once the Rule goes into effect in May.

Venue is not a continental breakfast; you cannot pick and choose on a Plaintiffs' whim where and how a lawsuit is filed. Indeed, this is why § 1391(e)(1)(B) has the "substantial" qualification as one of the factors in deciding venue. Federal courts have consistently cautioned against such behavior. *See Moreno v. City of N. Y.*, No. 14-cv-6062(NG), 2015 WL 403246 at *2 (E.D.N.Y. Jan. 28, 2015) (Gershon, J.) (holding that a

court's discretion under 1404(a) is properly exercised to discourage judge shopping). The Rule at issue in this case was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C. Most of the Plaintiffs in this case are also based in Washington D.C. and eighty percent of the attorneys in this matter work in Washington D.C. Thus, the D.D.C. has a stronger interest in resolving this dispute, as it is the epicenter for these types of rules and challenges thereto. *See Stewart v. Azar*, 308 F. Supp. 3d 239, 289 (D.D.C. 2018) (Boasberg, J.) ("[the D.C. Circuit] has more experience with APA cases, which would *weigh against* transfer [out of the D.C. Circuit]" (emphasis added)).

Regarding the third and fourth factors, both the Northern District of Texas and the D.D.C. are familiar with the Constitution, the law that will be applied in this case. Further, despite the CFPB's apparent concerns, the Northern District of Texas is equally apt in adjudicating APA matters. *See, e.g., Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 WL 965299, at *41–44 (N.D. Tex. Mar. 5, 2024) (Pittman, J.); *see also Texas v. Biden,* 589 F. Supp. 3d 595 (N.D. Tex. 2022) (Pittman, J.). This should assuage Plaintiffs' hyperbolic concerns that transfer would force all future APA claims to be brought in the D.D.C. *See* ECF No. 55 at 14–17. Sure, the D.D.C. might see more than their fair share of APA claims as compared to other jurisdictions, just as the Southern District of Florida likely sees more maritime claims than the Northern District of Ohio. That does not mean that the Northern District of Ohio lacks the ability to adjudicate such a claim, it just means that the Southern District of Florida might have more interest or geographic proximity to the locations of the relevant parties in handling such matters. Here too the case with APA claims belongs in the D.D.C.

An easy way for Plaintiffs to guarantee proper venue is to bring cases in jurisdictions where the impact is *uniquely* and *particularly* felt, and where a *substantial* part of the events occurred. 28 U.S.C.A. § 1391(e)(1). Here, there is no unique or particular impact felt in the Northern District of Texas and little if any of the events surrounding the Rule have occurred here. In fact, as far as this Court can discern, not one of the banks or credit card companies directly affected by the future Rule

is located in the Fort Worth Division. Importantly, while the third and fourth factors are neutral, they (like all other private- and public-interest factors) do not favor this case remaining in the Northern District of Texas.

\*      \*      \*

Having considered the totality of the public- and private-interest factors, the Court concludes that this case should be **TRANSFERRED** to the United States District Court for the District of Columbia.

## CONCLUSION

This case does not belong in the Northern District of Texas and certainly not in the Fort Worth Division. The only apparent connection is that one Plaintiff is headquartered in the Northern District and the effects of the Rule will be felt generally here. But the effects of the CFPB's Rule will be felt in every district in the United States. As noted, eighty percent of counsel in this case are effectively working out of DC, with only two of the ten attorneys working in Fort Worth. Here, the Court will refrain from taking part in "creative judging" and is compelled to follow the law laid out by Congress in 28 U.S.C. § 1404(a).[2] Thus, having considered the relevant private- and public-interest factors, the Court concludes that this case should be and is hereby **TRANSFERRED** to the United States District Court for the District of Columbia.

**SO ORDERED** on this **28th day of March 2024.**

_Mark T. Pittman_

Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[2] One single object... [will merit] the endless gratitude of the society: that of restraining the judges from usurping legislation." _Letter from Thomas Jefferson to Edward Livingston_ (Mar. 25, 1825), in 16 THE WRITINGS OF THOMAS JEFFERSON 112, 113 (Andrew A. Lipscomb & Albert Ellery Bergh eds., 1904).

7