No. 24-10248

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

CHAMBER OF COMMERCE OF THE UNITED STATES OF
AMERICA, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,

*Defendants-Appellees.*

---

On Appeal From the United States District Court
For the Northern District of Texas, Fort Worth Division
Case No. 4:24-cv-213

---

# APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION
# FOR INJUNCTION PENDING APPEAL

---

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*
Joseph Frisone
Justin M. Sandberg
  *Senior Counsel*
Stephanie B. Garlock
  *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Introduction ........................................................................................... 1

Background ............................................................................................ 3

      A.   Statutory and Regulatory Background .................................... 3

      B.   Factual and Procedural Background ...................................... 5

Argument ............................................................................................... 7

  I.   This Court lacks jurisdiction to hear this appeal. ....................... 7

  II.  Even if the Court had jurisdiction, Plaintiffs are not entitled to an injunction pending appeal ......................................................... 12

      A.   If the case remains in the Northern District of Texas, Plaintiffs are unlikely to succeed on the merits because venue is improper there. ............................................................................. 12

      B.   Plaintiffs are unlikely to succeed on the merits of their statutory claims ............................................................................ 17

      C.   The balance of equities and public interest do not support an injunction pending appeal. .............................................. 20

Conclusion ......................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*All. for Hippocratic Med. v. U.S. FDA*,
  78 F.4th 210 (5th Cir. 2023) ................................................................20

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ...............................................................15

*Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*,
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) .....................................13

*Clark & Reid Co. v. United States*,
  804 F.2d 3 (1st Cir. 1986) ....................................................................14

*Clarke v. Commodity Futures Trading Comm'n*,
  74 F.4th 627 (5th Cir. 2023) ..................................................................7

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ...................................................................5

*Ctr. for Biological Diversity v. Spellmon*,
  2022 WL 3541879 (D. Mont. Aug. 18, 2022) ......................................14

*ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*,
  867 F.3d 564 (5th Cir. 2017) ................................................................18

*Humane Soc'y of the U.S. v. Hodel*,
  840 F. 2d 45 (D.C. Cir. 1988) ..............................................................16

*In re Deepwater Horizon*,
  988 F.3d 192 (5th Cir. 2021) ..................................................................9

*Inst. of Certified Pracs., Inc. v. Bentsen*,
  874 F. Supp. 1370 (N.D. Ga. 1994) ......................................................14

*June Medical Services, L.L.C. v. Phillips*,
  2022 WL 4360593 (5th Cir. Sept. 28, 2022) ......................................8, 9

*Maryland v. King*,
  567 U.S. 1301 (2012) ...........................................................................20

ii

*McCoy v. Louisiana State Bd. of Ed.*,
  332 F.2d 915 (5th Cir. 1964) ................................................................8

*NAACP v. Tindell*,
  95 F.4th 212 (5th Cir. 2024) ...............................................................12

*Russo v. Barnard*,
  2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) .....................................17

*State v. Biden*,
  10 F.4th 538 (5th Cir. 2021) ...............................................................20

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) ............................................................................15

*VRC LLC v. City of Dallas*,
  460 F.3d 607 (5th Cir. 2006) ..............................................................20

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................12

**Statutes**

15 U.S.C. § 1604(d) ..................................................................................19

15 U.S.C. § 1665d(a) ..................................................................................3

15 U.S.C. § 1665d(b) ..................................................................................3

15 U.S.C. § 1665d(c) .............................................................................3, 17

15 U.S.C. § 1665d(e) .............................................................................3, 17

15 U.S.C. § 1693o-2(a)(2) ........................................................................18

28 U.S.C. § 1292(a)(1) ................................................................................7

28 U.S.C. § 1391(e)(1) ..............................................................................14

28 U.S.C. § 1391(e)(1)(B) .........................................................................17

Credit Card Accountability Responsibility And Disclosure Act of 2009
  (Credit Card Act of 2009)
   Pub. L. No. 111-24, 132 Stat. 1734 (2009) ..........................................3

iii

**Regulations**

12 C.F.R. § 1026.6(b)(2)(viii)........................................................19

12 C.F.R. § 1026.6(b)(3)..............................................................10

12 C.F.R. § 1026.7(b)(11)(i)(B)....................................................19

12 C.F.R. § 1026.9(c)(2)(v)(A).....................................................10

12 C.F.R. § 1026.52(b)(1)(i) ..........................................................4

12 C.F.R. § 1026.52(b)(1)(ii).........................................................4

Truth in Lending, Final Rule,
  75 Fed. Reg. 37526 (June 29, 2010)..........................................3

**Other Authorities**

Pet'rs' Br., *CFPB v. CFSA*, No. 22-448,
  2023 WL 3385418 (S. Ct. filed May 8, 2023) .......................17

S. 414, 111th Cong. § 103 (2009)...............................................18

Synchrony Financial (SYF) Q4 2023 Earnings Call Transcript (Jan. 23, 2024).....12

## INTRODUCTION

Just over three weeks ago, Plaintiffs—a group of trade associations—filed this case and asked the district court to preliminarily enjoin a Consumer Financial Protection Bureau regulation governing credit card late fees. The district court treated that request with dispatch: It ordered the agency to respond to the preliminary injunction motion in just three business days and requested additional briefing on venue on a similar schedule. Just days after receiving the last briefs—and only two weeks after his assignment—Judge Pittman determined that the case "does not belong in the Northern District of Texas," and transferred it to the U.S. District Court for the District of Columbia. *See* Dist. Ct. Dkt. 67 at 7.

Plaintiffs did not wait for the district court to do that work. By that point—in fact, literally minutes after filing their last brief—Plaintiffs had already raced to this Court, claiming the district court "effectively denied" their request for a preliminary injunction by failing to rule by the deadline they tried to set for the court.

This Court should dismiss the appeal for lack of jurisdiction. Although in rare cases, appellate courts have jurisdiction over actions that deny injunctive relief in practical effect, the district court did not effectively deny an injunction. Plaintiffs' motion has been pending for just over three weeks—not lingering for months without action. Nor has the district court blown through any deadlines that

1

would render an injunction ineffective. To be sure, the district court has not rubber-stamped Plaintiffs' request on their preferred timeline, but its care in assessing Plaintiffs' motion, including the venue problems that led it to transfer the case, should not be confused with a denial of the preliminary injunction motion—which remains pending and which the appropriate district court can act upon in due course.

Finally, even if this Court had jurisdiction, Plaintiffs would not be entitled to an injunction pending appeal. If the case remained here, Plaintiffs would not likely succeed on the merits because the Northern District of Texas is not a proper venue for this suit. The rule Plaintiffs challenge applies only to the nation's 30-35 largest credit card issuers, not one of which is based in the Northern District. The only large issuer even indirectly involved is a Utah bank that claims membership in the local chamber of commerce in Fort Worth. But the Fort Worth Chamber cannot secure venue because it lacks standing: An association devoted to promoting the local economy lacks standing to assert out-of-state card issuers' interests in charging high late fees. So, if the case remained in the Northern District, it should be dismissed for improper venue. In addition, Plaintiffs are unlikely to succeed on their statutory claims, and the balance of equities do not support an injunction. Accordingly, if the Court does not dismiss for lack of jurisdiction, it should deny Plaintiffs' motion.

## BACKGROUND

### A.     Statutory and Regulatory Background

The Credit Card Accountability and Disclosure Act (the CARD Act) amended the Truth in Lending Act (TILA) to "establish fair and transparent practices relating to the extension of credit." *See* Pub. L. No. 111-24, 132 Stat. 1734, 1734 (2009). As relevant here, the CARD Act mandates that the "the amount of any penalty fee" imposed on credit card consumers must be "reasonable and proportional" to the violation of the card agreement. 15 U.S.C. § 1665d(a). The Act leaves implementation of that provision to expert financial regulators (originally the Federal Reserve Board, now the Bureau). In particular, it tasks the Bureau with "establish[ing] standards for assessing whether" any penalty fee, including a late fee, "is reasonable and proportional." *Id.* § 1665d(b). The statute instructs the Bureau to "consider" a list of four factors in that rulemaking. *Id.* § 1665d(c). Finally, the CARD Act authorizes—but does not require—the Bureau to establish a "safe harbor" fee amount presumed to be reasonable and proportional. *Id.* § 1665d(e).

In 2010, the Federal Reserve Board promulgated a rule implementing the CARD Act's mandate. 75 Fed. Reg. 37526 (June 29, 2010). Among other things, that rule established a safe harbor. *Id.* at 37572. After authority transferred to the Bureau in 2011, the Bureau repromulgated the Board's regulation without change,

3

and then regularly adjusted the safe harbor amount for inflation thereafter, ultimately reaching $30 for a first violation and $41 for subsequent ones. *See* 12 C.F.R. § 1026.52(b)(1)(ii).

The Bureau revisited this in a final rule (Late Fee Rule or Rule) issued on March 5, 2024. *See* App.011-App.107. Based on additional data and a decade of experience with the existing regulatory regime, the Bureau determined that the safe harbor had allowed late fees to balloon far beyond what was "reasonable and proportional." App.039. Indeed, a new analysis revealed that the existing safe harbor had allowed late fee revenue to climb at least five times higher than relevant costs of collection. App.039. The Bureau therefore decided to repeal that safe harbor for the nation's largest card issuers. App.039.

Separately, the Rule also adopted a new safe harbor of $8 to provide large issuers "compliance certainty and administrative simplicity." App.041. As before, the safe harbor sets no cap on late fees. The minority of larger credit card issuers that, in the Bureau's estimate, may not be able to cover relevant costs with an $8 fee can continue to impose higher fees if the fee is cost-justified, 12 C.F.R. § 1026.52(b)(1)(i). App.045. The Late Fee Rule is set to take effect on May 14, 2024. App.072.

## B.    Factual and Procedural Background

Plaintiffs sued in the Fort Worth Division of the Northern District of Texas to vacate the regulation. Plaintiffs are six business associations of varying sizes and scopes. Only one—the Fort Worth Chamber of Commerce—is located in the Northern District of Texas. App.168.

Plaintiffs raise a constitutional challenge (Compl. ¶¶ 86-87) to the rule based on this Court's decision in *Community Financial Services Ass'n of America, Ltd. (CFSA) v. CFPB*, which held the Bureau's statutory funding mechanism unconstitutional and which the Supreme Court is currently reviewing. 51 F.4th 616, 638 (5th Cir. 2022), *cert granted*, 143 S. Ct. 978 (2023). They also raise four claims under the Administrative Procedure Act (APA). *See* Compl. ¶¶ 88–107.

The same day they filed the complaint, Plaintiffs moved for a preliminary injunction based on their constitutional challenge and a subset of their APA claims. *See* App.109-App.110. The Bureau opposed just three business days later, as directed by the court. App. 210, App. 212. Among other arguments, the Bureau contended that Plaintiffs are unlikely to succeed on the merits because venue in the Northern District of Texas is improper. App.231-App.235.

A week after the complaint was filed, the case was reassigned to Judge Mark Pittman. App.009, App.251. And just two business days after that, Judge Pittman asked for supplemental briefing—to be completed within the week—to

5

address his "concerns regarding whether the Fort Worth Division of the Northern District of Texas is the correct venue to hear this lawsuit." App.275.

The next day (March 19), Plaintiffs filed a motion requesting "expedited consideration" of their preliminary injunction motion "before" the district court "t[ook] up the issue of venue." App.282. Although Plaintiffs acknowledged that they had not sought a temporary restraining order, they asked for a ruling on a similarly rushed timeline, and in any event by Friday, March 22. App.283. Such a rush was justified, Plaintiffs claimed, because issuers needed to print new disclosures quickly. App.283. Plaintiffs threatened to seek appellate review if the court did not act that week, App.293, and they requested an injunction pending appeal, if the court were to deny the preliminary injunction. App.284.

The district court denied the motion for expedited consideration. App.307-App.308. The court noted that, given its busy docket, it "does not have the luxury to give increased attention to certain cases just because a party to the case thinks their case is more important than the rest." App.308. That order did not rule on Plaintiffs' request for a preliminary injunction or an injunction pending appeal.

The Bureau moved to transfer on Thursday, March 21. App.310. Plaintiffs opposed the transfer motion on Monday, March 25. App.375-App.394. Just minutes later, they noticed this appeal. App.412-App.414. In this Court, Plaintiffs filed an emergency motion for an injunction pending appeal and an "immediate"

administrative stay of the Rule. Emergency Mot. 4, ECF No. 7. Three days later

(March 28), the district court transferred the case to D.D.C. *See* Dist. Ct. Dkt. 67 at

7. Plaintiffs are now seeking to reverse that transfer. *See* ECF No.47.

## ARGUMENT

### I.    This Court lacks jurisdiction to hear this appeal.

There is no basis for this Court to exercise appellate jurisdiction. Courts of

appeals have jurisdiction over appeals from "[i]nterlocutory orders of the district

courts … refusing … injunctions." 28 U.S.C. § 1292(a)(1). There is no such order

here. Recognizing that, Plaintiffs instead argue that this is a rare case in which

"[a]ction by a district court … has the practical effect of denying injunctive relief

necessary to remediate a threat of serious or irreparable harm" and thus is

"immediately appealable." Notice of Appeal 1 (citing *Clarke v. Commodity

Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023)). It is not.

That the district court did not rule on Plaintiffs' preliminary injunction

motion on Plaintiffs' preferred 15-day timeline doesn't demonstrate that it

"effectively denied" the motion. The cases on which Plaintiffs rely illustrate that

inconvenient truth. In *Clarke*, this Court held that the district court had effectively

denied a preliminary injunction by failing to rule within *three months*, even after a

request for expedition. 74 F.4th at 635. Here, by contrast, not even three weeks

passed between the filing of the motion and Plaintiffs' appeal.

7

*McCoy v. Louisiana State Board of Education*, 332 F.2d 915 (5th Cir. 1964),

points the same way. There, a plaintiff seeking admission to college appealed after

not obtaining a ruling on her preliminary injunction motion for nearly four months.

*Id.* at 917. With the start of the next semester nearing, the Court held that the

district court issuing a procedural order while delaying ruling on the preliminary

injunction had the "practical effect" of denying the injunction. *Id.* That is far from

the case here. There is no comparable emergency (more on that below), and the

district court did not delay ruling—and, indeed, proceeded expeditiously, with

extremely truncated briefing schedules.

Instead, this case is much more analogous to *June Medical Services, L.L.C.

v. Phillips*, No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022). There, the

plaintiff had filed an emergency motion asking the district court to vacate a

permanent injunction within two days. The district court denied plaintiff's request

to expedite but did not decide the motion to vacate. The court stated that it would

"take up [this] issue after full briefing … in compliance with and within the

deadlines established." *Id.* at *1 (brackets in original). Plaintiff appealed, arguing

(among other things) that the district court's order had the "practical effect" of

denying its motion. This Court dismissed the appeal for lack of jurisdiction,

explaining that the district court's order did not rule on the merits but only denied

8

expedited relief. *Id*. That "administrative decision … to manage [the court's] docket" did not have the "practical effect" of denying the request. *Id*. at *1-2.

So, too, here, in denying Plaintiffs' request for (very) expedited ruling, the court did not effectively deny the injunction, but only exercised its "inherent authority to manage its docket," *In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021) (per curiam). In declining to rule on Plaintiffs' timetable, the court did not "touch the merits," *see June Medical*, 2022 WL 4360593, at *2, nor did it delay ruling on the merits long enough to amount to an effective denial. Indeed, the court had ordered expedited briefing on Plaintiffs' motion for a preliminary injunction that concluded within a week after this suit was filed and ordered expedited briefing on venue that concluded within another week. It then promptly transferred this case to D.D.C.—which can now consider the preliminary injunction motion in due course, without questions about whether venue properly lies there. Barely three weeks have passed since Plaintiffs filed this suit. There is simply no basis to conclude that Plaintiffs' motion for a preliminary injunction has been "effectively denied."

There is no emergency in this case that requires a faster decision or that entitles Plaintiffs to run straight to this Court before the appropriate district court resolves their motion. At the center of Plaintiffs' pitches to the district court for expedited review, and to this Court for interlocutory review, is a claim that large

9

card issuers *need* an answer on the status of the Late Fee Rule by today, March 29.
*See* App.293; Emergency Mot. 8-9. That is simply not true.

To begin, Plaintiffs' March 29 deadline is not tied to any required steps for
compliance with the Late Fee Rule. Although TILA and Regulation Z do require
notices 45 days in advance of certain changes in terms, they do not require issuers
to give advance notice if they reduce a late fee—which is the only change that the
Late Fee Rule requires (for larger card issuers that currently charge a fee above the
$8 safe harbor that is not otherwise cost-justified). *See* 12 C.F.R.
§ 1026.9(c)(2)(v)(A); *see also id.* § 1026.6(b)(3). Large card issuers need only
send a notice by March 29 if *they* choose to raise *other* fees or rates starting May
14. The Rule does not require them to raise other fees or rates at all—and certainly
not by the May 14 effective date.

Without any supposedly looming late-March deadline, all Plaintiffs are left
with is the fact that they will need to update applications, new account agreements,
and other physical disclosures by the effective date in May—more than six weeks
away. Plaintiffs say large card issuers cannot possibly print new disclosures before
then, even with the lead time given. Emergency Mot. 16-17. But having to print
documents is not an emergency that warrants an appeal before the district court can
rule. And, in any event, not one declarant supports the claim that affected issuers
cannot update disclosures in time. The most any declarant can muster is that

members of the various plaintiff-associations "may not all" be able to print disclosures in time, *e.g.*, App.178, and that "to [the] knowledge" of one bank executive, his bank has never previously updated disclosures on this scale so quickly, App.204. Notably absent is any statement that any card issuer will not be able to print materials by May 14. Instead, Plaintiffs rely on an (unsworn) comment letter submitted by a third-party printing-service provider stating that it "[t]ypically" requested four months' notice for print jobs and that it believed industry would need longer if everyone were updating disclosures at once. App.208. But that comment was submitted in response to the *proposed* rule—which would have resulted in new disclosures from nearly 4,000 banks and credit unions, rather than the 30-35 large card issuers ultimately covered by the final Late Fee Rule. App.028, App.208.

And such large issuers have not had a problem quickly updating their agreements and disclosures when it suited them, including when the Bureau increased the safe harbor for inflation. *See* App.328. While Plaintiffs protest that such an inflation adjustment was predictable, allowing card issuers to engage in "months of preparatory work," Emergency Mot. 18-19, that kind of preparation has begun here, too. The leadership of Synchrony Bank—the Utah bank that joined the Fort Worth Chamber—has stated publicly that it has been planning for the final

rule, including any changes in disclosures, for more than a year. *See, e.g.*, Synchrony Financial (SYF) Q4 2023 Earnings Call Transcript (Jan. 23, 2024).[1]

In sum, Plaintiffs have identified no "highly unusual circumstances," Emergency Mot. 1, justifying running to this Court before the appropriate district court can rule.

## II.    Even if the Court had jurisdiction, Plaintiffs are not entitled to an injunction pending appeal.

An injunction is an extraordinary remedy that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain an injunction pending appeal, Plaintiffs must show "(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief." *NAACP v. Tindell*, 95 F.4th 212, 215 (5th Cir. 2024) (per curiam). Plaintiffs cannot establish each of these elements, so the Court should deny their request for an injunction pending appeal.

## A.    If the case remains in the Northern District of Texas, Plaintiffs are unlikely to succeed on the merits because venue is improper there.

If this case were to remain in the Northern District of Texas, Plaintiffs would not likely succeed on the merits because venue is improper there. Given that Judge

---

[1] *Available at* https://www.fool.com/earnings/call-transcripts/2024/01/23/synchrony-financial-syf-q4-2023-earnings-call-tran/.

Pittman transferred the case to D.D.C. (where venue is indisputably proper), the propriety of venue won't be an issue when that court considers Plaintiffs' preliminary injunction motion. But, in the Northern District of Texas, venue problems prevent Plaintiffs from succeeding. Only one Plaintiff resides in the Northern District, the Fort Worth Chamber of Commerce. But the Fort Worth Chamber—suing on behalf of its members, only one of whom is named, Synchrony Bank *of Draper, Utah*—lacks standing and, therefore, cannot provide the foundation for venue in the Northern District. Put simply, this case—about a consumer finance rule issued in Washington, D.C., and applicable to a small number of large card issuers, not one of which appears to be based in the Northern District of Texas—does not have an adequate connection to that district for venue to be proper.[2] Although Plaintiffs try to wish away this problem—they devote a single sentence (Emergency Mot. 20) to defending the propriety of the venue here—this is not a mere "discretionary issue," Emergency Mot. 3. Rather, because venue is improper, dismissal is appropriate, and Plaintiffs are unlikely to succeed on the merits.[3]

---

[2] Plaintiffs bear the burden of proving that venue is proper. *E.g.*, *Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023).

[3] Plaintiffs are wrong to claim (at 1) that the Bureau does not contest that they are likely to succeed based on their funding challenge. And while the Bureau recognizes that a panel of this Court is presently bound by *CFSA*, it respectfully

In suits against the Federal government, venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Plaintiffs' brief in this Court relies only on subsection (C) (plaintiff's residence) as the basis for venue in the Northern District. Specifically, Plaintiffs contend that venue is appropriate in that district because the Fort Worth Chamber of Commerce resides there. Emergency Mot. 20. The contention is unavailing: the Fort Worth Chamber lacks standing and, therefore, cannot secure venue.

The party that creates venue "must have standing," *Clark & Reid Co. v. United States*, 804 F.2d 3, 5 (1st Cir. 1986). This makes sense. Otherwise, a plaintiff could "manufacture venue by adding … a party" that "lacks standing to bring th[e] action." *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994); *see also Ctr. for Biological Diversity v. Spellmon*, No. 21-cv-47, 2022 WL 3541879, at *3 (D. Mont. Aug. 18, 2022). Tellingly, Plaintiffs

maintains that that decision is mistaken. *See* Pet'rs' Br., *CFPB v. CFSA*, No. 22-448, 2023 WL 3385418 (S. Ct. filed May 8, 2023). *CFSA*, moreover, is not final: The Supreme Court is currently reviewing it. At any rate, even if this Court thought Plaintiffs were likely to succeed on their constitutional claim, that would not be enough to justify preliminary relief because the balance of equities and public interest disfavor such relief. *See infra* section II.C.

14

have not disputed this commonsense principle in the district court or in their opening brief.

The Fort Worth Chamber, however, doesn't have standing to sue—because it cannot satisfy the well-established test for associational standing. To sue on behalf of its members, an association must demonstrate three things: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) nothing requires "the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

The second element sinks Plaintiffs. The interests that the Fort Worth Chamber seeks to protect are not germane to the organization's purpose. Admittedly, the germaneness test requires only that the litigation be "pertinent" to the organization's interests. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). But in trying to use local associations as venue vehicles for far-flung members, Plaintiffs fail even this test. Based on the only member of the Fort Worth Chamber that Plaintiffs' papers identify as allegedly harmed by the Rule—Synchrony Bank, of Draper, Utah, App.203—the interest that the Fort Worth Chamber seeks to protect is the interest of a large, out-of-state card issuer to charge high late fees. The interest in allowing those out-of-

15

town issuers to charge high fees is not "germane" to the Fort Worth Chamber of Commerce's interest in "cultivat[ing] a thriving business climate in [] Fort Worth." App.168. The economic benefits of the previous rule accrued to large card issuers, but plaintiffs have not identified a large card issuer based in Fort Worth (and the Bureau is aware of none). The new Rule, on the other hand, could help Fort Worth business thrive, by returning billions of dollars to the pocketbooks of consumers, *see, e.g.*, App.077, some of which could be spent in the businesses of Fort Worth.

At bottom, an association is not supposed to function as "a law firm seeking to sue in its own name on behalf of a client (or a firm member) alleging injury from governmental action wholly unrelated to the firm." *Humane Soc'y of the U.S. v. Hodel*, 840 F. 2d 45, 57-58 (D.C. Cir. 1988). But here, that appears to be what has happened. Utah-based Synchrony is not listed in the membership directories of any of the following chambers of commerce: Salt Lake City, Denver (Metro), Greater Phoenix, Las Vegas, New York City, Los Angeles, Chicago, Dallas, or New Orleans. But it is a member of the Fort Worth Chamber.[4] In other words, Synchrony apparently retained the Fort Worth Chamber to bring this suit in the Northern District of Texas, notwithstanding the "attenuated nexus to the Fort

---

[4] Indeed, Synchrony Bank is apparently a recent addition to the Fort Worth Chamber's roster. The bank didn't show up on the public membership rolls until the Bureau noted in its district court filings that the Bank wasn't listed as a member at the time Plaintiffs filed suit. *See* App.261.

Worth Division." App.275. That's not how associational standing works.[5]

### B. Plaintiffs are unlikely to succeed on the merits of their statutory claims.

Plaintiffs are also unlikely to succeed on the merits of their claims that the Late Fee Rule exceeds the Bureau's statutory authority.

Plaintiffs first focus on the Bureau's decision to repeal the existing and unjustifiably high safe harbor for late fees charged by the nation's largest card issuers and exercise its discretion to put in place a new one that is more consistent with the statute's mandates. *See* Emergency Mot. 11-16. In Plaintiffs' view, because the statute lays out four considerations for the Bureau to "consider" in "issuing rules required by this section"[6]—creditor costs, deterrence, consumer conduct, and "such other factors as the Bureau may deem necessary or appropriate"—the Bureau needed to allow late fees to exceed issuers' costs.

---

[5] In the district court, Plaintiffs also argued that venue was appropriate under the events or omissions prong of the statute, § 1391(e)(1)(B). But Defendants have not raised that argument here. In any case, it would fail for several reasons, including that that prong "looks to the defendant's conduct, and where that conduct took place." *Russo v. Barnard*, No. 3:21-CV-165, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021).

[6] The Bureau was not even required to consider the four factors when eliminating the old discretionary safe harbor and adopting a new one—the actions Plaintiffs object to most. The statute only mandates that the Bureau consider those statutory standards in issuing "required" rules, 15 U.S.C. § 1665d(c), but the safe harbor is only authorized, not required, 15 U.S.C. § 1665d(e).

That is not what the statute says. The only mandate to the Bureau is to *consider* those factors when engaging in required rulemaking under § 1665d. "[T]he term 'consider' does not compel a certain outcome, but rather it serves to inform the … careful decision-making process." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 573 (5th Cir. 2017). As a result, "Congress's use of the term 'consider' in a statute requires an actor to merely investigate and analyze the specified factor, but not necessarily act upon it." *Id.* (cleaned up).[7]

In any event, as the Bureau cataloged in its preliminary injunction briefing, the Bureau both considered and acted upon all four statutory factors when it promulgated the Late Fee Rule. *See* App.239-App.242. For instance, the Rule includes a lengthy discussion of empirical evidence on deterrence—including from the Bureau's own analysis and studies commenters submitted. *See* App.046-App.061. Reviewing this evidence, the Bureau determined an $8 safe-harbor late fee, although *calculated* based on costs, would nevertheless *be a deterrent* to

---

[7] Plaintiffs contrast the CARD Act's mandate here with two other provisions that focus solely on costs, Emergency Mot. 13—but each only underscores the error of Plaintiffs' reading. Both provisions would substantively require fee amounts to be based on cost. *See* Credit Card Accountability Responsibility and Disclosure Act of 2009, S. 414, 111th Cong. § 103 (as reported by S. Comm. on Banking, Hous., & Urb. Affs., Apr. 29, 2009) (amount "shall be reasonably related to the cost to the card issuer"); 15 U.S.C. § 1693o-2(a)(2) (amount "shall be reasonable and proportional to the cost incurred"). What these provisions show, then, is that Congress knows how to craft a substantive standard—and that it did not enact one here, instead directing the Bureau to determine the appropriate standard after "considering" various factors.

18

paying late. App.046-App.047. The Bureau found no compelling evidence that a higher late fee of $30 or $40 would be "sufficiently more of a deterrent … to justify late fees far above cost," especially given that other negative consequences of late payment already provide deterrence. App.049. Plaintiffs complain that $8 is not enough to "meaningfully" deter or reflect consumer conduct. Emergency Mot. 14. But the Bureau found the $8 safe harbor for large card issuers *did* meaningfully reflect all statutory factors, including deterrence. Plaintiffs thus are unlikely to succeed on their claim that the Late Fee Rule somehow precludes them from collecting "reasonable and proportional penalty fees," Emergency Mot. 13.

Plaintiffs also claim that the Rule's effective date violates a provision of TILA providing that any rule "requiring any disclosure which differs from the disclosures previously required … shall have an effective date of that October 1 which follows by at least six months the date of promulgation," 15 U.S.C. § 1604(d). Emergency Mot. 14-16. The Late Fee Rule, however, is not a rule "requiring any [different] disclosure" within the meaning of this provision. The statute's disclosure requirements remain unchanged: Issuers must disclose late payment fees at account opening, 12 C.F.R. § 1026.6(b)(2)(viii), in periodic statements, *id.* § 1026.7(b)(11)(i)(B), and elsewhere. The Late Fee Rule will require large issuers to change the *amount* they charge if their current fees are no longer justifiable, and they'll have to disclose that new amount. But credit card

companies have quickly changed the numerical amount of late fees on an annual basis, undermining their complaints that the effective date here imposes an unreasonable burden that TILA disallows.

Because Plaintiffs are unlikely to succeed on their statutory claims, they cannot obtain an injunction pending appeal on those grounds.

### C.    The balance of equities and public interest do not support an injunction pending appeal.

Plaintiffs cannot obtain an injunction pending appeal for another reason, too: They fail to make the required showing that the irreparable injury their members face "outweighs any damage that the injunction will cause the opposing party; and … that the injunction will not disserve the public interest," *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

The irreparable injuries Plaintiffs invoke do not come close to outweighing the damage to the Bureau and the public interest. For one, when "the Government is enjoined from enforcing its statutes or regulations, 'it suffers a form of irreparable injury.'" *All. for Hippocratic Med. v. U.S. FDA*, 78 F.4th 210, 251 (5th Cir. 2023) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)), *cert. granted*, 144 S. Ct. 537.[8] Beyond that, granting an injunction

---

[8] Granted, this harm is tied to the merits arguments as "there is generally no public interest in the perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (cleaned up). But to the extent Plaintiffs contend the Rule

would mean that Americans continue to be burdened with unjustified fees, draining money they could otherwise use to support their families and bolster the economy. The harm that large card issuers face absent an injunction does not outweigh those harms. After all, each dollar of unjustifiably high late fees that a card issuer can no longer charge is a dollar back in the pocket of a consumer. And while Plaintiffs also complain that issuers will incur "millions of dollars" in compliance costs from printing new disclosures, Emergency Mot. 10, that is hardly compelling given that the 30-35 issuers actually affected by the Rule collectively have over $10 trillion in assets and take in over $130 billion each year just in interest and fees charged to credit card customers.

## CONCLUSION

No injunction pending appeal is warranted.


Dated: March 29, 2024                    Respectfully submitted,

                                         Seth Frotman
                                           *General Counsel*
                                         Steven Y. Bressler
                                           *Deputy General Counsel*
                                         Kristin Bateman
                                           *Assistant General Counsel*

---

is "unlawful" because it was promulgated using funding this Court found unconstitutional in *CFSA*, that should not factor into the balance because the relief Plaintiffs seek—reinstatement of the old rule's higher safe harbor—would not solve that problem: The old rule was promulgated using the exact same funding source.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock
 *Counsel*
Joseph Frisone
Justin M. Sandberg
 *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7201
stephanie.garlock@cfpb.gov

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

On March 29, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Counsel for all participants are registered CM/ECF users, and service on them will be accomplished by the CM/ECF system.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation in Federal Rule of Appellate Procedure 27(d)(2)(A). It contains 5,144 words, excluding the portions exempted by Rule 32(f). This document complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 365 in Times New Roman, a proportionally spaced typeface.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock