CASE NO. 24-10248

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA;
FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF
COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER
BANKERS ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS,

Plaintiffs – Appellants

v.

CONSUMER FINANCIAL PROTECTION BUREAU; ROHIT CHOPRA, in his
official capacity as Director of the Consumer Financial Protection Bureau,

Defendants – Appellees.

*On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division*

**APPELLANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR INJUNCTION PENDING APPEAL AND ADMINISTRATIVE STAY**

Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***COUNSEL FOR APPELLANTS***

Thomas Pinder
D.C. Bar No. 451114
tpinder@aba.com
Andrew Doersam
D.C. Bar No. 1779883
adoersam@aba.com
AMERICAN BANKERS
ASSOCIATION
1333 New Hampshire Ave. NW
Washington, DC 20036

***COUNSEL FOR AMERICAN
BANKERS ASSOCIATION***

Jennifer B. Dickey
D.C. Bar No. 1017247
Jdickey@uschamber.com
Maria C. Monaghan
D.C. Bar No. 90002227
mmonaghan@uschamber.com
U.S. CHAMBER LITIGATION
CENTER
1615 H Street NW
Washington, DC 20062

***COUNSEL FOR CHAMBER OF
COMMERCE OF THE UNITED
STATES OF AMERICA***

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................1

Argument....................................................................................................2

I.    This Court has jurisdiction to review the denial of Plaintiffs'
motion for a preliminary injunction. ..................................................2

II.    Plaintiffs established a right to preliminary injunctive relief..............8

    A.    The Fort Worth Chamber has standing to bring this suit
and can support venue in the Northern District of Texas. .........8

    B.    Plaintiffs are likely to succeed on the merits of their
constitutional and statutory claims. ..........................................9

    C.    The balance of the equities and public interest support an
injunction pending appeal. .......................................................11

Conclusion ...............................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384 (5th Cir. 2009)...............2

*H.K. Porter Co., Inc. v. Metro Dade Cnty.*, 650 F.2d 778 (5th Cir. 1981)...............3

*June Medical Services LLC v. Phillips*, No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022)......................................................................................4

*McCoy v. Louisiana State Bd. of Educ.*, 332 F.2d 915 (5th Cir. 1964)....................3

*Normand v. Research Inst. Of Am., Inc.*, 927 F.2d 857 (5th Cir. 1991)...................3

*Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987)...........................................10

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016).........................................................5, 7

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962)................................................2

**Statutes**

28 U.S.C. § 1292 ........................................................................................................5

28 U.S.C. § 1391(e)(1)(B) ..........................................................................................8

28 U.S.C. § 1391(e)(1)(C) ..........................................................................................8

i

# INTRODUCTION

Plaintiffs' emergency motion for an injunction pending appeal should be granted to avoid even greater irreparable harm than has already accrued because of the CFPB's unlawful Final Rule—unlawful as to substance under the Constitution and relevant statutes, and unlawful as to timing because of its effective date.  The CFPB argues that such relief should not be granted because the district court did not issue an order expressly denying Plaintiffs' motion.  But under this Court's precedent, judicial non-action *can* constitute an appealable, effective denial of relief. That is what occurred in this case.  Making the effective denial even clearer is the district court's decision to transfer this case to the District of Columbia, after this appeal was docketed and without a stay of its order (notwithstanding Plaintiffs' request).

Given the Final Rule's 60-day effective date, Plaintiffs are unable to litigate this challenge on a more relaxed timeline without incurring additional and substantial irreparable harm.  Plaintiffs brought their case in a proper venue and demonstrated that all of the relevant factors for preliminary injunctive relief weighed in their favor.  Plaintiffs should not be denied meaningful relief simply because the same agency that promulgated the unlawful Rule also set an effective date that made seeking injunctive relief on any more measured timeline impossible.  Plaintiffs have acted in good faith and made every effort to comply with the timelines set both by

the district court and the CFPB.  But having been effectively denied a remedy, Plaintiffs must now seek emergency relief before this Court.

## ARGUMENT

**I.    This Court has jurisdiction to review the denial of Plaintiffs' motion for a preliminary injunction.**

In their opening brief, Plaintiffs established that the district court has effectively denied their motion for a preliminary injunction.  As this Court has explained, a district court effectively denies a motion for a preliminary injunction, thereby allowing for appellate review, when it issues an "order that, while not explicitly denying a preliminary injunction, nonetheless has the practical effect of doing so and might cause irreparable harm absent immediate appeal." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023). Whether the "practical effect" of a district court's course of conduct is an effective denial is a fact-specific inquiry.  In assessing that "practical effect," courts have considered whether the district court required plaintiffs to respond to other court requests unrelated to the plaintiffs' entitlement to preliminary injunctive relief, *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962), whether the district court denied a motion for an expedited ruling, *Clarke*, 74 F.4th at 635, and whether the district court ruled or intended to rule on a potentially dispositive issue that could affect the viability of plaintiffs' case or appeal, *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 386 (5th Cir. 2009) (unpublished per curiam) (ruling would undermine claim); *H.K.*

2

*Porter Co., Inc. v. Metro Dade Cnty.*, 650 F.2d 778, 782 n.7 (5th Cir. 1981) (ruling could moot appeal); *Normand v. Research Inst. Of Am., Inc.*, 927 F.2d 857, 866 (5th Cir. 1991). The circumstances of this case fit neatly within these precedents. Here, the district court declined to act on Plaintiffs' motion for a preliminary injunction by the date Plaintiffs had respectfully identified as triggering irreparable harm (*Clarke*), granted a transfer motion that could affect Plaintiffs' right to relief (*Gallagher*), invited Defendants to brief the discretionary issue of venue before addressing the preliminary injunction motion (*Lynd, Porter*), and denied Plaintiffs' motion to expedite consideration of the preliminary injunction motion (*Clarke*). Op. Br.10-11. The "practical effect" of this course of conduct was denial of the preliminary injunction motion.

Against this straightforward argument, the CFPB first contends that the key effective denial cases have involved district court inaction over a longer period of time. Resp.7. But in those cases, there was generally more time before the irreparable harm would begin. *See, e.g.*, *Clarke*, No. 22-51124, Dkt. 6 at 4 (5th Cir.) (plaintiffs sought a preliminary injunction in September 2022, noting irreparable harm to accrue in mid-to-late January 2023); *McCoy v. Louisiana State Bd. of Educ.*, 332 F.2d 915, 916-17 (5th Cir. 1964) (plaintiffs filed suit in January 1964 seeking preliminary relief before a summer session of university that would begin on June 10, 1964). The more accelerated pace of this litigation is a creature of the CFPB's

own making. Had the CFPB chosen an effective date that complied with TILA, rather than the unlawfully compressed timeline in the Rule, Plaintiffs would have had time to litigate their motion on a more ordinary schedule, before irreparable harm accrued. *See, e.g.*, *Tex. Bankers Ass'n v. Off. Of the Comptroller of the Currency*, 2:24-cv-025 (Plaintiffs Chamber of Commerce, American Bankers Association, and Longview Chamber of Commerce pursued preliminary injunctive relief on an ordinary time frame given the 2-year implementation period).

Moreover, even though the urgency in this case can be laid squarely at the feet of the CFPB, Plaintiffs acted in good faith to give the District Court reasonable time to review their motion. Plaintiffs did not seek a TRO, notwithstanding their strong case on the merits. Br. in Supp. of Pls.' Mot. to Expedite 5 (ECF No. 48). Instead, they asked for (and received) an expedited briefing schedule from Judge O'Connor. Plaintiffs had hoped there might be more time for the District Court to consider the motion before the Rule would be published in the Federal Register and the 60-day effective date triggered, but because the Rule was published so quickly, the irreparable harm has already begun accruing and is increasing by the day. Emergency Mot. for Inj. 16-19. Indeed, the course of proceedings here confirms that this case is not like *June Medical Services LLC v. Phillips*, No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022), where the State of Louisiana gave a district court a mere *two days* to vacate a permanent injunction in light of a new Supreme Court

4

decision that could bear on that injunction, *id.* at *1.  In addition to giving the district court significantly more time to act after receiving full briefing from both sides, Plaintiffs' request did not require the district court to confront "complicated issues of procedural and substantive law." *See id.* & n.1.  Instead, Plaintiffs' motion relied upon a precedent that the CFPB concedes is binding in this Court with respect to the merits of one of Plaintiffs' claims and a showing of irreparable harm that the CFPB did not contest in its opposition.  And of course, contrary to the district court in *June Medical*, which confirmed its intent to rule on the motion after full briefing by both parties, *see id.*, the district court in this case confirmed its intent to do the opposite, taking up discretionary transfer first.

Given that unrecoverable compliance costs constitute irreparable harm under this Circuit's precedent, *Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016), there must be *some* point before the effective date wherein a court's failure to rule on a preliminary injunction motion becomes effective denial.  Otherwise, the only check on administrative agencies that issue unlawfully-short compliance deadlines imposing real harms on regulated parties would reside in the discretion of district courts, with no avenue for appellate review.  *Contra* 28 U.S.C. § 1292 (giving Circuit Courts jurisdiction over appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions").  And agencies would have every incentive to

regulate through compliance burdens, counting on the fact that regulated parties will not reverse course once they have undertaken expensive compliance efforts.

Therefore, the question is simply *when* judicial non-action becomes effective denial.  In this case, that occurred when the district court declined to rule on Plaintiffs' motion and sua sponte invited the CFPB to file a motion for discretionary transfer, which the court indicated it would need to resolve before Plaintiffs' request for preliminary injunctive relief, Ord. 1 (ECF No. 45), and regarding which Plaintiffs may not have had an opportunity to seek meaningful review.  Any doubt was removed when the court granted the transfer motion that it invited.

The CFPB suggests that finding an effective denial here is somehow in conflict with the general authority of district courts to manage their dockets.  Resp.9. But the CFPB's argument ignores the confluence of unusual circumstances here—a rule issued in violation of binding precedent, *with* an unlawful, accelerated effective date, *infra* II.B, combined with the District Court's failure to act despite Plaintiffs' showing of ever-growing irreparable harm, *and* the District Court's denial of Plaintiffs' motion to expedite consideration of the preliminary injunction motion before resolving the separate, non-threshold issue of discretionary transfer.  A ruling that those circumstances together gave rise to an effective denial would have no impact on cases that do not share these unique circumstances, nor improperly intrude on district courts' authority to manage their own dockets.

Finally, the CFPB intones that any harm to issuers in these circumstances are minimal. But the CFPB cannot contest that these harms are irreparable under this Court's precedent in *Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016). The CFPB also recognizes that issuers representing 95% of the industry are required to print and deliver updated "applications, new account agreements, and other physical disclosures by the effective date in May," Resp.11, but then dismisses those costs, even though there are millions of credit card agreements entered into each year. And those printed disclosures are precisely the type of substantial and irreparable compliance costs that constitute irreparable harm. *See Texas v. EPA*, 829 F.3d at 434. Moreover, in order for issuers to make any mitigating changes to their interest rates or fees in light of this new rule (as the CFPB repeatedly suggested in the Final Rule), such changes require a minimum of 45 days' notice to cardholders. Thus, for each day that passes without relief, large card issuers are put to the choice of either allowing the irreparable harm after the effective date to increase (by not making such changes) or incurring substantial costs to try to print and deliver those change of terms notices now, potentially leading to loss of customer goodwill and increased costs of new notices if they are later able to reverse course due to an injunction or vacatur of the Rule.

Under these circumstances, Plaintiffs should not be denied a meaningful opportunity to challenge the Final Rule in this Court. The practical effect of the

district court proceedings was to deny them such relief, and Plaintiffs' members' irreparable harm that will only continue to grow absent action by this Court.

## II.     Plaintiffs established a right to preliminary injunctive relief.

Defendants next argue that Plaintiffs are not entitled to an injunction under the ordinary factors. Resp.12. Their primary argument against likelihood of success is, tellingly, about improper venue, because they are trying to avoid binding constitutional precedent in this Court.

### A. The Fort Worth Chamber has standing to bring this suit and can support venue in the Northern District of Texas.

First, Defendants insist that the Fort Worth Chamber, which is suing on behalf of its members, lacks standing and therefore cannot support venue, based either on a plaintiff's residence, 28 U.S.C. § 1391(e)(1)(C), or on "events or omissions giving rise to the claim," 28 U.S.C. § 1391(e)(1)(B). Defendants' argument turns only on the second element of associational standing—whether the rulemaking is germane to Plaintiffs' organizational mission, which they admit requires only that litigation be "pertinent" to the organization's interest. Resp.15. Challenging a rule that impacts the issuance and use of credit cards is undoubtedly "pertinent" to the Fort Worth Chamber's mission of "cultivat[ing] a thriving business climate in the Fort Worth region" and "help[ing] businesses compete in the local and global marketplace." App. 22, Decl. of Steve Montgomery ¶ 4 (ECF No. 5); *see also* Reply in Supp. of Pls.' Mot. for Prelim. Inj. 3-4 (ECF No. 41).

That the Fort Worth Chamber member listed in Plaintiffs' papers is headquartered out of state does not undermine standing, and Defendants cite no authority stating otherwise. Indeed, such a rule is nowhere to be found in any precedent regarding associational standing or venue and would entirely upend those doctrines.

Because the Fort Worth Chamber *does* have Article III standing, Defendants' arguments that venue is improper for lack of standing must fail.

### B. Plaintiffs are likely to succeed on the merits of their constitutional and statutory claims.

Second, Plaintiffs have demonstrated that they are likely to succeed both on their constitutional and statutory claims. Defendants conceded that *Community Financial* controls Plaintiffs' constitutional claims in their initial response to Plaintiffs' motion for a preliminary injunction. Br. in Supp. of Resp. 8 n.1 (ECF No. 23). Moreover, Plaintiffs are likely to succeed on the merits of their claims that the Rule violates the CARD Act, TILA, and the APA. The CFPB's position requires interpreting these statutes to grant the agency virtually unchecked discretion to regulate penalty fees, but such a reading willfully ignores the plain text and meaning of key provisions. Reply in Supp. of Pls.' Mot. for Prelim. Inj. 7 (ECF No. 41).

The CFPB argues that it need only "consider" the factors Congress enumerated in § 1665d(c). Resp. 18. But this reading is inconsistent with the statutory scheme that Congress enacted—a scheme that requires the agency to

consider its deterrent effects, and which Congress presumptively "intended … to have meaningful effect." *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987). The CFPB's argument that the three § 1665d(c) considerations do not apply to its safe-harbor is similarly misguided. Resp.17 n.6. Though the safe harbor is optional, it must nevertheless meet the reasonable-and-proportional standard to which those statutory considerations apply, by the CFPB's own admission. Resp.19. The CFPB's overly narrow interpretation of "costs" likewise disregards the statutory text and structure, which contains no justification for distinguishing between pre- and post-charge-off collection costs.

Finally, the Rule's effective date fails to comply with TILA. Changing late fees requires updated—and therefore, new—disclosures, as the CFPB recognizes, Resp.10, 19. The TILA provision at issue guarantees a reasonable period of time to update such disclosures, and the CFPB's crabbed reading of the statute (to apply only when the general disclosure requirements change) would gut the protections that provision affords. 15 U.S.C. § 1604(d).

The CFPB's gerrymandered reading of the statutory scheme does little to rebut Plaintiffs' claims. Because Plaintiffs have demonstrated both a likelihood of success on the merits and irreparable harm, under binding precedent, Plaintiffs' motion for a preliminary injunction pending appeal should be granted.

**C. The balance of the equities and public interest support an injunction pending appeal.**

Finally, this Court should reject the CFPB's assertion that the Final Rule is good policy and thus that the equities disfavor an injunction. Whether an agency considers a rulemaking to be good policy is not the question. Particularly not where, as here, the CFPB has acted in violation of this Court's precedent, as well as three federal statutes, and admits that it helps some consumers but harms others. "[O]ur system does not permit agencies to act unlawfully even in pursuit of desired ends." *Wages & White Lion Invs., LLC v. United States Food & Drug Admin.*, 16 F.4th 1130, 1143 (5th Cir. 2021). This Court's action is thus urgently needed to pause the CFPB's unlawful actions and the irreparable harm they are imposing on Plaintiffs' members.

## CONCLUSION

Plaintiffs respectfully ask that the Court grant their emergency motion for injunction pending appeal, and an administrative stay of the Rule during its consideration of the motion.

Dated: March 29, 2024

Respectfully submitted,

*/s/ Michael Murray*
Michael Murray
D.C. Bar No. 1001680
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
tortarantola@paulhastings.com

PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***COUNSEL FOR APPELLANTS***

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on March 29, 2024, I filed foregoing motion via the Court's CM/ECF system and

also caused the foregoing to be served by email on the following counsel for

Defendants-Appellees:

Stephanie Garlock
Justin Michael Sandberg
1700 G Street, NW
Washington, DC 20552
stephanie.garlock@cfpb.gov
justin.sandberg@cfpb.gov

/s/ Michael Murray
Michael Murray
*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains fewer than 2,600 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13. I certify that the facts supporting emergency consideration of the motion are true and complete.

Dated: March 29, 2024

*/s/ Michael Murray*
Michael Murray
*Attorney for Appellants*